UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN RHONE,                          )
                                      )
        Plaintiff,                    )
                                      )
    vs.                               )    Case No. 4:14CV655 CDP
                                      )
CAROLYN COLVIN,                       )
Acting Commissioner of Social Security, )
                                      )
        Defendant.                    )

## <u>MEMORANDUM AND ORDER</u>

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Kevin Rhone's application for

Supplemental Security Income under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381, *et seq.* Claimant Rhone brings this action asserting disability

because of arthritis, intellectual disability,[1] and history of substance abuse. The

Administrative Law Judge concluded that Rhone was not disabled. Because I find

that the decision denying benefits was not based upon the entire record, I will

remand for further consideration.

---

[1] Rhone refers to this specific impairment as "mental retardation"; however, that term has fallen into disuse in favor of "intellectual disability." *Compare Cheatum v. Astrue*, 388 Fed. Appx. 574, 576 (8th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05) *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2015).

## Procedural History

On August 25, 2011, Kevin Rhone filed for Supplemental Security Income under Title XVI, and initially alleged an onset date of September 1, 1991. The Social Security Administration denied the claim, and Rhone sought a hearing before the Administrative Law Judge ("ALJ"), which was held on March 5, 2013. At the hearing, Rhone orally requested through his attorney that the onset date be amended to August 25, 2011. The ALJ issued an unfavorable decision on March 15, and Rhone appealed to the Appeals Council. That request was denied on February 5, 2014, and so the ALJ's decision now stands as the final decision of the Commissioner.

## Evidence Before the ALJ

*Function Reports*

Rhone submitted two function reports, both of which were completed by his cousin. The reports state that Rhone lives with his girlfriend and has no problems with his personal care. Rhone drives a car and can perform household chores, including laundry, ironing and cooking without help or encouragement. Rhone repeated that he cannot read, but he is able to pay bills and count change. He spends time with others, including attending church twice per week. Rhone can follow spoken instructions and gets along well with authority figures. Rhone's conditions affect his ability to lift, squat, bend, stand, reach, kneel, understand,

follow instructions, complete tasks, concentrate, and remember. In the space left to explain how his conditions affect each ability, Rhone referred to his illiteracy. Tr. 150–57, 170–176.

*Rhone's Testimony*

On March 5, 2013, Rhone testified before the ALJ that he dropped out of school in ninth grade because he could not keep up his G.P.A. He always had a tutor while in school and received help with most subjects. Rhone testified that although he can read and write, he cannot understand newspaper articles and needed help submitting his SSI benefits application. Rhone cannot multiply or divide, but he can add and subtract. Tr. 34, 36–38.

Rhone has a driver's license, but he required the questions to be read to him. At past jobs, he has been able to follow instructions after being shown how to do the work. Tr. 38–40

Rhone has been working part-time as a gas station janitor since May 2012, and his duties involve cleaning, dusting, and mopping. Rhone also stocks shelves, which requires lifting canned goods and sugar; however, cases of soda are too heavy. Rhone started full-time, but had to switch to part-time, because the arthritis in his hands and feet prevent him from lifting, grabbing, and standing on his feet for too long. He works five days a week for approximately four hours per day, although his supervisor lets Rhone take extended breaks when his hands hurt, so

long as the work is completed.  When Rhone leaves work, he feels "sluggish and tired" and needs to "lay down due to hepatitis."  Tr. 34–36, 46, 53.

Sometimes at work, Rhone's hands swell; this prevents him from gripping boxes and pens.  The swelling occurs daily, although it improved for a month after receiving some shots in his hands.  Sometimes Rhone's feet stiffen up and he needs to sit until they feel better.  Rhone also gets very tired and breathless "really soon"; his doctor thinks this is caused by his hepatitis, which began acting up after Rhone was released from prison.  Although this makes Rhone want to sit down, he pushes through it in order to work.  Tr. 40–43.

Rhone lives with his girlfriend and helps with the chores, which include sweeping and cleaning.  These tasks cause him trouble and Rhone often needs to lie down.  When shopping, Rhone pushes the buggy.  Rhone does not leave the house much, because he is too tired and wants to rest before his next week begins.  He used to enjoy walking and exercising, but he has been unable to do those activities since his hepatitis started acting up.  Tr. 44–45.

Rhone testified that he saw a "Dr. Sam" for the pain in his hands.  Rhone received the shots in his hands and some medicine that caused him to see double.  The ALJ requested copies of that medical evidence from Rhone's attorney.  Tr. 48–49.

*Vocational Expert*

The ALJ also received testimony from a vocational expert ("VE"), who based her testimony upon Rhone's medical records, testimony, and recent work history as a janitor. The VE testified that Rhone's current job would be classified as light unskilled. The ALJ presented the VE with a hypothetical person of Rhone's age, with limited education, capable of doing only medium work activity, and who was limited to simple, routine, and repetitive tasks. The VE testified that the hypothetical individual would be capable of performing Rhone's past work. The VE described the jobs available in Missouri and nationally: cleaner two (medium, unskilled) and dining room attendant (medium, unskilled).

The ALJ posed a second hypothetical person to the VE, reducing the individual to only light work and keeping all other traits constant. The VE testified that this second individual could work three different light, unskilled jobs: hand presser, small product assembler, and housekeeping cleaner. Each of these jobs was available in the national and Missouri economies.

Rhone's counsel asked the VE whether the second individual could perform the jobs if he were limited to standing at thirty minutes at a time with the option to sit for up to thirty minutes throughout the workday. The VE testified that such an individual could not work as a housekeeping cleaner but could perform the other two jobs. If further limited to frequent handling, fingering, and manipulating

objects with the upper bilateral extremities, the individual would still be able to work as both a hand presser and small products assembler. However, if handling and fingering were reduced to occasional, both hand presser and small products assembler would be precluded.

Rhone's counsel then changed the first hypothetical by imposing a limitation that the worker would need a supervisor routinely to demonstrate the job duties as needed. The VE testified that although the job would remain at a medium work activity level, the person would likely need to work at a sheltered workshop environment. Tr. 54–58.

*Medical Records*

On April 8, 2009, Rhone complained to the Bureau of Prisons Health Services that he was having difficulty in reading books and newspapers. He requested a pair of reading glasses. Tr. 325.

Rhone underwent a psychological evaluation by Dr. Paul Rexroat, Ph.D., on November 25, 2011. Rhone reported that he dropped out of school in the ninth grade because he lost interest and had difficulty learning. He began using marijuana and heroin at age 13 and last used them in 2001. Dr. Rexroat noted that Rhone appeared well groomed and nicely dressed; he had a normal energy level and was alert. Rhone was unable to perform basic multiplication or division, and he used his fingers to solve simple addition and subtraction problems. Rhone

appeared to be functioning "below the average range of intelligence." He could understand and remember simple instructions and can sustain concentration and persistence with simple tasks. Dr. Rexroat reported no Axis I or II diagnoses; he noted occupational, educational, and housing stressors on Axis IV, and reported a Global Assessment of Functioning (GAF) score of 55. Tr. 217–219.

In May 2011, Rhone sought treatment from Dr. Laila Hanna and received a new patient physical. He reported no problems with fatigue and there are no notes related to arthritis. At his July 7 follow-up, Dr. Hanna assessed Rhone as having chronic hepatitis type B. Tr. 267–271. On July 29, 2011, Rhone returned to Dr. Hanna; the records show no complaints of arthritis or fatigue. Tr. 263–64.

On April 11, 2012, Dr. Michael Gilmore, M.D., administered a hepatitis type A vaccination to Rhone. Rhone complained of pain in his left shoulder. Tr. 257.

On June 20, 2012, Rhone sought treatment from Dr. Hanna, who noted that his active problems included lumbago and tenosynovitis of the hand and wrist. Rhone reported feeling fatigued, hand pain, and problems with his hands swelling. His lower back was tender to palpation and he exhibited pain when bending his back. Dr. Hanna prescribed Flexeril[2] and Tylenol Arthritis Pain. Dr. Hanna examined Rhone's hands and his lumbar spine. She noted minimal degenerative

---

[2] Flexeril is a muscle relaxant. Medline Plus (last revised Oct. 1, 2010), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html.

disk spurs at L1-L2, L3-L4 and L4-L5, but found both the spine and hands otherwise unremarkable. Tr. 252 –256.

On July 9, 2012, Dr. Hanna noted that Rhone had tested positive for rheumatoid factor and that he complained of pain in his hands. Her assessment shows that Dr. Hanna doubted it was rheumatoid arthritis and posited that it could be secondary to hepatitis B. Dr. Hanna advised that Rhone consult a rheumatologist and that he wear a wrist support at night. Tr. 249–50.

On August 27, 2012, Rhone presented to Dr. Hanna complaining of stiffness and pain in his lower back. Rhone reported fatigue and back pain that worsened when lying down. Rhone denied numbness and tingling of the limbs. Dr. Hanna assessed Rhone as having a back sprain and prescribed Flexeril and Ibuprofen. Tr. 246–48.

In September, Rhone sought treatment from Drs. Sams and Hsieh at Barnes Jewish Hospital Department of Rheumatology. Rhone reported fatigue pain in his fingers and toes, which he had experienced for three to four months. His hands throb and he often experiences numbness and trouble gripping. Dr. Sams assessed Rhone as having hand pain with "some concern for inflammatory arthritis vs. tenosynovitis;" "[o]ther possible diagnosis include Hep C arthralgias and neuropathy." There was "no frank Synovitis" and "[n]o obvious triggering today." Tr. 383–84. Rhone was instructed to return in December.

On October 25, 2012, Dr. Hanna reported prescribing hydroxychloroquine sulfate[3] per instructions by Dr. Sams, who had ordered the medication for synovitis. Tr. 245.

Rhone reported to Dr. Laila Gabrawy on December 3, 2012, complaining of eye pain. His diagnoses included arthritis, osteoarthritis, and "no hepatitis." Tr. 242.

Rhone presented to Dr. Hanna on December 17, 2012, complaining of fatigue and hand pain. He stated that he discontinued the hydroxychloroquine because the medication was not helping. Dr. Hanna recommended that Rhone restart the medication and to keep his rheumatology appointment as scheduled. She assessed Rhone as having chronic hepatitis type B, arthropathy, rheumatoid arthritis, and fatigue. Tr. 238–39.

Rhone returned to Dr. Sams on December 31, 2012. Imaging of his hands showed mild synovitis, tenosynovitis, and some bone marrow edema. Dr. Sams administered injections into Rhone's hands, which resolved the pain. Tr. 381–82.

Rhone saw Dr. Akwi Asombang, M.D., on February 11, 2013, for lab work related to his hepatitis. Dr. Asombang listed the disease as "chronic Hepatitis C." Tr. 275–78.

---

[3] Hydroxychloroquine sulfate is an antimalarial drug that is used to treat rheumatoid arthritis in patients whose symptoms have not improved with other treatments. Medline Plus (last revised September 1, 2010), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601240.html.

Dr. Hanna completed a medical statement regarding arthritis on February 25, 2013. The statement noted a history of joint pain, swelling, and tenderness. Dr. Hanna also noted that Rhone had synovial inflammation, morning stiffness, positive serum rheumatoid factor, and the inability to perform fine and gross movements effectively. Both hands had evidenced inflammation, as had Rhone's eyes. Dr. Hanna noted significant fatigue. She estimated that Rhone experienced mild limitations of daily living activities and in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. Rhone was estimated to be limited to standing for 30 minutes at one time with no sitting limits. He could lift five pounds both frequently and occasionally, could perform fine manipulation constantly, gross manipulation frequently, and raise his arms over shoulder level occasionally. However, Rhone could never bend or stoop and was limited to working four hours per day. Tr. 377–78.

## Legal Standard

To be eligible for Supplemental Security Income under the Social Security Act, the claimant must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do [her] previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If the claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner reviews whether the claimant has the Residual Functional Capacity (RFC) to perform his past relevant work. If the

claimant can perform his past relevant work, he is not disabled. If the claimant cannot perform his past relevant work, the burden of proof shifts and the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 20 C.F.R. § 416.920.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's impairments.
6. The testimony of vocational experts when required, which is based upon a proper hypothetical question that sets forth the claimant's impairment.

*Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585–86 (8th Cir. 1992)

(citing *Cruse v. Bowen*, 867 F.2d 1183, 1184–85 (8th Cir. 1989)).

The court must also consider any evidence that fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at 1217 (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

# The ALJ's Findings

The ALJ found that Rhone was not disabled within the meaning of the Social Security Act from the amended onset date of August 25, 2011 through the date of the decision. He issued the following specific findings:

1. The claimant has not engaged in substantial gainful activity since August 25, 2011, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: arthritis and a history of substance abuse (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except the claimant is limited to light unskilled work activity with only simple routine and repetitive tasks.

5. The claimant has no past relevant work (20 C.F.R. § 416.965).

6. The claimant was born [in] 1958 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 C.F.R. § 416.968).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform
(20 C.F.R. §§ 416.969 and 416.969(a)).

The ALJ determined that Rhone's mental impairment did not meet the
requirements of listing 12.05 under 20 C.F.R. Part 404, Subpart P, Appendix 1,
because Rhone did not meet the have deficits in adaptive functioning that initially
manifested during the developmental period.

## Discussion

Rhone alleges three points of error. First, he contends that the ALJ failed at
Step Two by omitting any discussion of intellectual disability. Second, Rhone
alleges that the ALJ failed to evaluate fully the evidence as to whether Rhone's
intellectual disability meets listing 12.05 under 20 C.F.R. Part 404, Subpart P,
Appendix 1. Third, Rhone attributes error to the ALJ's RFC determination.

### 1. Step Two

At Step Two, the ALJ determined that Rhone had two severe impairments:
arthritis and a history of substance abuse. Thus, Rhone is correct that the ALJ
erred in omitting intellectual disability from his severe impairments. However, the
ALJ then proceeded to Step Three, whereupon he evaluated whether Rhone's
intellectual disability is equivalent to one of the listed impairments.

The Eighth Circuit has "consistently held that a deficiency in opinion-
writing is not a sufficient reason for setting aside an administrative finding where

the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)). Because the ALJ proceeded to evaluate Rhone's intellectual disability at Step Three, Rhone was not prejudiced by its omission from the list of severe impairments at Step Two. Thus, this point of error does not merit reversal.

### 2.    Step Three

At Step Three, the claimant bears the burden to show that he meets each criterion of the listed impairment. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). The medical standards necessary to meet a listed impairment are higher than the statutory standard, because the listings create a presumption of disability. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted).

Rhone claims the ALJ erred by finding his mental deficiencies did not meet listing 12.05(C) for intellectual disability. The Commissioner admits that Rhone meets the criteria set forth in 12.05(C), but the Commissioner argues that Rhone failed to meet the requirements in the introductory paragraph of 12.05.

Listing 12.05's introductory paragraph states that "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."

20 C.F.R. Pt. 404, Subpt. P, App. 1 at ¶ 12.05. The requirements in the introductory paragraph are mandatory, though they do not require a formal diagnosis of mental disability (formerly known as "mental retardation"). *See Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). "Deficits in adaptive functioning" is independent from the other four criteria in 12.05 and must be independently proven. *Cheatum v. Astrue*, 388 Fed. Appx. 574, 576 (8th Cir. 2010).

The ALJ determined that Rhone does not have deficits in adaptive functioning. This determination is supported by substantial evidence. The ALJ cited Rhone's ability to do some calculations and work five days per week without any reported difficulties in performing or understanding the assigned tasks. In addition, the record indicates that Rhone can drive, groom himself, and participate in household chores. Rhone also attends church twice per week and spends time talking, laughing, and playing with others. These sorts of activities have been held to support an ALJ's determination that no deficits in adaptive functioning exist. *Cf. id.* at 576–77. Rhone correctly notes other evidence, such as his unsteady work history and truncated educational background, which support a finding of adaptive functioning deficits. *Cf. Christner v. Astrue*, 498, F.3d 790, 794 (8th Cir. 2007). However, because substantial evidence supports the ALJ's decision – even if I may

have reached a different result – I must affirm.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

### 3.     RFC

Rhone contends that the ALJ failed to include any limitations related to Rhone's hands in the RFC determination.  Specifically, Rhone alleges that his arthritis affects his ability to perform tasks involving fine manipulation.  Rhone also contends that the ALJ improperly disregarded the opinion of Dr. Hanna.  Finally, Rhone contends that the ALJ failed to cite to any medical evidence supporting the ALJ's RFC determination.

At Step Four of the sequential analysis, the ALJ is required to determine a claimant's RFC.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  RFC is what a claimant can do despite the limitations caused by her impairments.  *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).  Although the claimant has the burden to establish her RFC, the ALJ bears the primary responsibility for assessing the RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *McGeorge*, 321 F.3d at 768; *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger*, 390 F.3d at 591.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. *Id.* The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. *Id.* The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness, and side effects of any medication; and (5) the claimant's functional restrictions. *Id.* "Whether or not a[n] explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record that cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005); *Masterson v. Barnhart*,

363 F.3d 731, 738 (8th Cir. 2004).  "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence."  *Masterson*, 363 F.3d at 738.  The ALJ, however, "need not explicitly discuss each *Polaski* factor."  *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).  The ALJ need only acknowledge and consider those factors.  *Id.*  Although credibility determinations are primarily for the ALJ rather than the Court, the ALJ's credibility assessment must be based on substantial evidence.  *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

The ALJ acknowledged that Rhone complained of difficulties with his hands but found that Rhone was not credible as to the alleged intensity, persistence, duration, and impact on functioning.  The ALJ discredited Rhone in part because MRIs of Rhone's hands that were taken in June 2010 were negative and because Rhone failed to keep his September 2012 rheumatologist appointment.  The ALJ also found that "the lack of strong prescription pain medication is inconsistent with the complaints of disabling pain."  Tr. 256.

The ALJ's determinations as to Rhone's credibility are not supported by substantial evidence in the record.  The ALJ incorrectly noted that Rhone did not follow through with his September 12, 2012, rheumatologist appointment.  However, the transcript shows that on March 14, 2013 – the day before the ALJ's decision was issued – Rhone's attorneys faxed to the Office of Disability

Adjudication and Review additional medical records.[4]  These documents show that Rhone did receive treatment from the Barnes Jewish Hospital Department of Rheumatology on September 12, 2012 and again in December of that year. Tr. 380–384.

Other evidence in the record contradicts the ALJ's cited reasons for discounting Rhone's subjective statements regarding his hands.  MRIs and other imaging received at the rheumatology appointments revealed synovitis, tenosynovitis, and bone marrow edema in Rhone's hands.  Additionally, the ALJ's citation to the absence of "strong prescription pain medication" ignores the evidence as a whole.  Rhone is a recovering heroin addict, and so the absence of narcotic pain medication does not correlate with an absence of pain.  The ALJ also failed to note that Rhone was prescribed hydroxychloroquine sulfate, which is an antimalarial drug that is used to treat rheumatoid arthritis in patients whose symptoms have not improved with other treatments.  *See* Medline Plus (last revised September 1, 2010), http://www.nlm.nih.gov/medlineplus/druginfo/ meds/a601240.html.  It is plain from the record that the ALJ failed in his duty to "specifically demonstrate that he considered all of the evidence."  *Masterson*, 363 F.3d at 738

---

[4] These records were referenced in the hearing on March 5, at which time the ALJ expressed an interest in receiving them.  Tr. 60.

The ALJ also cited to some of the same evidence as reasons for discounting the opinion of Dr. Hanna. For the reasons discussed above, the ALJ's decision to discount that opinion does not appear to be based upon consideration of all the evidence in the record. Because I find that the first two arguments as to RFC require remand, I do not reach Rhone's third argument.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 406(g) for further consideration based upon the complete record.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of July, 2015.